J-A14014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANGELO MATAS | : | |
| | : | |
| Appellant | : | No. 259 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 18, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001752-2023

BEFORE: DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 4, 2026**

Michael Angelo Matas ("Appellant") appeals from the judgment of sentence entered by the Northampton County Court of Common Pleas after a jury found him guilty of Burglary, Robbery, and Conspiracy. He challenges the denial of his suppression motion. After careful review, we affirm.

The relevant factual and procedural history, gleaned from the certified record, is as follows. On April 20, 2023, sometime between 2:00AM and 4:00AM, Appellant and three others committed an armed home invasion at 2022 Willow Park Road in Bethlehem Township, demanding money and jewelry from the occupants. The homeowner shot at the intruders, hitting at least one, before they fled. The homeowner seized one of the intruders, Millito Delgado, and held him until police officers from the Bethlehem Township Police Department arrived in response to a radio call. While in custody, Mr. Delgado

identified Appellant, who has a distinctive facial tattoo, as one of the perpetrators.

Soon after the incident, Appellant appeared at St. Luke's Hospital-Warren Campus in Phillipsburg, New Jersey, with seven gunshot wounds. Due to the severity of his injuries, medical personnel immediately airlifted him to St. Luke's Hospital-Fountain Hill Campus in Bethlehem, Pennsylvania. Having learned that Mr. Delgado had identified Appellant as a participant in the home invasion and that a gunshot victim had been airlifted to St. Luke's Hospital in Bethlehem from St. Luke's in Phillipsburg, Investigator Edward Fox directed his other Bethlehem Township investigators to request the Phillipsburg Police Department to retrieve Appellant's bloody clothes and boots that medical staff had removed. A few hours later, Detective Cupon[1] of the Phillipsburg Police Department met Bethlehem Township Police Investigator Gretchen Kraemer in a parking lot located in Bethlehem and gave Appellant's bloody clothing and boots to her. Appellant was not immediately arrested because he was unconscious and undergoing surgery. The Commonwealth ultimately charged Appellant with multiple offenses related to the home invasion.

On November 8, 2023, Appellant filed an omnibus pre-trial motion, followed by a supplemental motion, seeking, *inter alia*, suppression of the clothing seized from St. Luke's Hospital in Phillipsburg and a DNA analysis report. The court held a hearing on December 20, 2023, at which Inspector

_____

[1] The record does not contain Detective Cupon's first name.

Jeremy Anderson of the Bethlehem Township Police Department testified regarding his interview with Mr. Delgado and the photographs from which Mr. Delgado had identified Appellant. The suppression court admitted the video of that interview into evidence. In addition, Investigator Kraemer testified regarding the clothing she retrieved from Detective Cupon with reference to the photographs of each piece that were admitted into evidence. She also testified that because the clothing was wet from blood saturation, she hung it up to dry.

Lastly, Investigator Fox acknowledged that he had not gotten a search warrant for the clothing obtained from the Phillipsburg police officer and testified that he directed the other investigators to obtain the clothing from the New Jersey hospital because he was concerned about "possible destruction of evidence," specifically that the clothes could be laundered, thrown in a dumpster, or burned. N.T. Suppression Hrg., 12/20/23, at 43.

Following argument, the court held the matter pending briefing by the parties. On May 7, 2024, the court entered an opinion and order granting in part and denying in part Appellant's omnibus motions. Relevant to this appeal, the court found that "the officers involved in the seizure of [Appellant's] clothes and shoes had a reasonable concern that this evidence would be tampered with and/or destroyed if it was not promptly seized and preserved." Trial Ct. Op., 5/7/24, at 12. The court also determined that the magistrate properly issued the search warrant seeking a sample of DNA from Appellant to compare to that found at the scene of the crime.

Appellant proceeded to a jury trial, and the jury found him guilty of one count each of Burglary, Conspiracy to Commit Burglary, and Conspiracy to Commit Robbery, and three counts of Robbery.[2] The court sentenced him to twenty-five to fifty years' incarceration.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The court filed a responsive Rule 1925(a) Opinion.

Appellant raises the following two issues for our review:

1. Did the trial court err when it denied Appellant's motion to suppress his personal belongings which were seized by law enforcement from the hospital because said items were seized and searched without a warrant or any valid exception to the search warrant requirement?

2. Did the trial court err when it denied Appellant's motion to suppress the results and evidence obtained from the search warrant for his DNA because the search warrant was not supported by probable cause?

Appellant's Br. at 7.

Both of Appellant's issues challenge the denial of his suppression motion. "[O]ur standard of review is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Troutman***, 349 A.3d 1008, 1012 (Pa. Super. 2025) (citation omitted). "While we defer to the court's factual determinations when supported by the record, we are not bound by the suppression court's legal rulings, which we review *de novo.*" ***Id.*** (citation and internal quotation marks omitted).

_____

[2] 18 Pa.C.S. §§ 3502(a)(1)(ii), 903, and 3701(a)(1)(ii), respectively.

A suppression court's findings of fact "are dependent on [its] credibility determinations." **In re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013). We, thus, "defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony." **Commonwealth v. Carmenates**, 266 A.3d 1117, 1127 (Pa. Super. 2021).

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. McCleary**, 193 A.3d 387, 391 (Pa. Super. 2018). "Protection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures." **Commonwealth v. Saunders**, 326 A.3d 888, 896 (Pa. 2024) (citation omitted). "This protection requires police to obtain a warrant from a neutral and detached magistrate before conducting a search, unless an exception applies." **Commonwealth v. Camacho**, 325 A.3d 685, 689 (Pa. Super. 2024), *reargument denied* (Nov. 12, 2024); **see also Commonwealth v. Livingstone**, 174 A.3d 609, 625 (Pa. 2017) (observing that "a search without a warrant may be proper where an exception applies and the police have probable cause to believe a crime has been or is being committed.") (citation omitted)). "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." **Commonwealth v. Jones-Williams**, 279 A.3d 508, 517 (Pa. 2022) (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving." ***Commonwealth v. Potts***, 73 A.3d 1275, 1280-81 (Pa. Super. 2013) (citation omitted).

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012); ***see also*** Pa.R.Crim.P. 581(H), *cmt.* (stating that the standard of proof is a preponderance of the evidence). The Commonwealth "satisfies its preponderance of the evidence burden if it proves to the satisfaction of the suppression court that the evidence was properly seized." ***Commonwealth v. Fulton***, 345 A.3d 352, 360–61 (Pa. Super. 2025) (citation omitted).

There are "a few specifically established, well-delineated exceptions" to the warrant requirement. ***Commonwealth v. Saunders***, 326 A.3d 888, 896 (Pa. 2024). One such exception is based on exigent circumstances. ***Id.*** "It is well-settled that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative." ***Commonwealth v. Johnson***, 969 A.2d 565, 569 (Pa. Super. 2009). Courts look at the totality of the circumstances to establish whether officers acted reasonably. ***Jones-Williams***, 279 A.3d at 517.

Exigency arises under different scenarios including, relevantly, where there may be "a likelihood that evidence will be destroyed if police take time to obtain a warrant." ***Id.*** (citation omitted). Our Supreme Court has observed

that bloody clothing removed by hospital personnel after a suspect had been admitted for treatment presents such a circumstance because it is "hard to imagine a hospital admission which would have not removed [the] appellant's clothes and subjected them to who knows what (*i.e.* storing, laundering, relatives taking, etc.)" **Commonwealth v. Wright**, 961 A.2d 119, 138 (Pa. 2008) (citation omitted).

* * *

In his first issue, Appellant asserts that the suppression court erred in concluding that exigent circumstances supported the warrantless seizure and search of his clothing left behind in St. Luke's Hospital in Phillipsburg. Appellant's Br. at 25. He posits that the Commonwealth did not present any evidence "to substantiate [the] speculative concerns" that the clothing could be destroyed, removed, or laundered, such as testimony from a nurse at the hospital or the New Jersey detective who procured the clothing from the hospital. **Id.** at 27. He also argues that the Commonwealth failed to meet its burden because Investigator Fox testified that in his 15 years of experience, he has never encountered an issue with hospital staff destroying items with potential evidentiary value. Appellant relies on **Commonwealth v. Silo**, 389 A.2d 62 (Pa. 1978), as dispositive, and concludes that nothing in the record "support[s] the [court's] factual finding that the officers in the case *sub judice*

had a 'reasonable concern' that the 'evidence would be tampered with and/or destroyed if it was not promptly seized and preserved.'" *Id*. at 21, 25-26.[3]

In ***Silo***, which is factually and procedurally distinguishable,[4] our Supreme Court addressed two issues: (1) whether clothing seized from a suspect after he went to the hospital was incident to his arrest, and (2) whether the suspect gave up his exclusive rights to his clothing when he admitted himself to the hospital so that the nurse's consent to the police officers' taking the suspect's clothing was sufficient to overcome the warrant

---

[3] Appellant also argues that Delgado's credibility at trial was "corroborated solely by the illegally seized evidence." Appellant's Br. at 32. Since Appellant has challenged only the denial of his suppression motion, our review pertains only to the record as it stood in connection with the suppression proceedings.

[4] In ***Silo***, neighbors reported to police that they heard screaming around 10 a.m. from the appellant's house where he lived with his mother. Later that day, the neighbors saw the appellant sitting outside his house, watched an ambulance arrived, and observed the EMTs putting the appellant into the ambulance before it drove away. Hours later, the neighbors became concerned about his mother's welfare because she had not left for work and her employer said she had not shown up to work. They called the police department and told responding police officers what they had heard and observed. A police officer called the hospital where the appellant was being treated and then drove to the hospital to pick up the appellant's house key. When police officers went into the appellant's house, they discovered the mother's body lying on the kitchen floor. They searched the house and discovered a bloody sweater lying on the appellant's bed. They returned to the hospital to speak with the appellant and while they were waiting for the doctor's permission, they asked the nurse for the appellant's clothes which carried blood stains. Following the appellant's arrest, he filed a suppression motion which was denied. A jury found him guilty of first-degree murder. On appeal, he challenged, *inter alia*, the denial of his suppression motion. Our Supreme Court reversed the judgment of sentence, concluding that the warrantless search and seizure of the appellant's clothing violated the Fourth Amendment's warrant requirement and the error was not harmless.

requirement. **See id.**, 389 A.2d at 65-66. Unlike the case before us, the Court was not tasked with addressing the exigency exception to the warrant requirement. Accordingly, **Silo** provides no relief for Appellant.

Based on our review, we conclude that **Wright**, 961 A.2d at 138, supports the suppression court's conclusion that the fast-moving pace of the investigation that involved multiple suspects, at least one of whom could have been the victim of the homeowner's shooting, and the fact that Appellant had been moved from the Phillipsburg hospital to the Bethlehem hospital for treatment of severe gunshot injuries, presented the exact circumstance that the **Wright** Court found to satisfy the definition of exigency so as to meet an exception to the warrant requirement, *i.e.*, the reasonable possibility that the New Jersey hospital would dispose of the bloody clothing. **Id.** Notwithstanding Investigator Fox's acknowledgment on cross-examination that he was unaware of any cases in which bloody clothing removed during treatment of gunshot victims has been destroyed or otherwise removed from a hospital, it was within the province of the suppression court to weigh the evidence to render its factual findings. This Court may not reweigh the evidence. Based on our *de novo* review of the trial court's legal conclusion, we agree that Appellant's constitutional rights were not violated by the warrantless seizure and subsequent handling of Appellant's clothing.

In his second issue, Appellant asserts that "the trial court erred in finding that the mere fact that Appellant was arrested constituted a sufficient nexus to warrant the issuance of a warrant for his DNA," and the DNA report resulting

from the comparison of Appellant's DNA to that found at the crime scene should have been suppressed. Appellant's Br. at 39. He argues that "there is no nexus established in the four corners of the affidavit for this reviewing Court to make an independent determination that incriminating evidence could be found in Appellant's DNA because it fails to specify how Defendant was allegedly connected to the crime." *Id.* at 38. We disagree.

"No search warrant shall issue but upon probable cause supported by one or more affidavits[.]" Pa.R.Crim.P. 203(B). "Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, there is a fair probability that evidence of a crime will be found in a particular place." *Troutman*, 349 A.3d at 1012 (citation omitted).

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Commonwealth v. Manuel*, 194 A.3d 1076, 1083 (Pa. Super. 2018) (citation omitted). This Court's duty, as the reviewing court, "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (citation and internal quotation marks omitted). "The reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether . . . there is substantial evidence in the record supporting the decision to issue a warrant[.]" *Commonwealth v. Mendoza*, 287 A.3d 457, 463 (Pa. Super.

2022)(citation omitted). In so doing, we "must accord deference to the issuing authority's probable cause determination," and view "the information offered to establish probable cause in a common-sense, non-technical manner." *Id.* (citation omitted).

Here, the affidavit of probable cause, which the magistrate determined presented probable cause to issue the search warrant to Investigator Fox to obtain a sample of Appellant's DNA provides, in relevant part, the following:

3. The facts in this affidavit come from my observations, my training and experience, and information obtained from other officers and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. On April 20, 2023, the Bethlehem Township Police Department responded to and investigated a home invasion and shooting incident in the early morning hours. The homeowner fired three rounds from his handgun defending himself. The homeowner struck at least one of the culprits with the rounds fired.

5. The investigation resulted in the arrest of Michael Matas, Anthony Santiago, Francis Ferrando, and Millito Delgado for burglary and robbery.

6. At the scene of the home invasion, Bethlehem Township Police Investigators collected multiple pieces of evidence including blood evidence and items left behind by the culprits.

7. These items of evidence were sent to the Pennsylvania State Police Laboratory's Serology Section for analysis. The chemist at the lab was able to extract DNA from multiple items for comparison.

8. Your Affiant seeks a DNA Sample from Michael Matas to compare against the DNA collected on the scene, to further this investigation and inculpate or exculpate Michael Matas.

- 11 -

Affidavit of Probable Cause, dated 7/26/23.

The suppression court found that "there is a sufficient nexus between the criminal activity detailed in the search warrant and the requested DNA sample." Trial Ct. Op. at 7.

> The affidavit states that DNA evidence was recovered at the scene of the crime and that an investigation was conducted which resulted in [Appellant's] arrest for the crime(s) at issue. The search warrant seeks a sample of [Appellant's] DNA for comparison to the material discovered at the crime scene. The affiant could have chosen to set forth in greater detail the particular investigatory steps that led to [Appellant's] arrest, but we find that the description contained in the affidavit is sufficient for the issuing authority to make [a] reasonable "practical, common-sense decision" that "given all circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Commonwealth v. Jones**, [668 A.2d 114,] 116-17 [Pa. 1995)](citations omitted). Because the Magisterial District Judge did not err in issuing the search warrant, we deny [Appellant's] motion to suppress evidence obtained therefrom.

**Id.** at 7-8.

We agree with the suppression court's reasoning. Although, as Appellant notes, the affidavit of probable cause did not state that Mr. Delgado had already identified Appellant as a participant in the home invasion or that Appellant had sought hospital treatment for several gunshot wounds, in light of the facts set forth in the affidavit of probable cause viewed in a "common-sense, non-technical manner," we conclude the magistrate had a substantial basis from which to conclude that there was a fair probability that Appellant's DNA would match that found at the crime scene. **Mendoza**, 287 A.3d at 463

- 12 -

(citation omitted). Accordingly, we conclude the court did not err in denying Appellant's motion to suppress the DNA report.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/4/2026